ROSA BALLASTER V. MANN & STEPHENS ET AL.

No. 130.

**1. Boundaries of Cooke and Archer Counties.**

A careful examination of the several acts of the Legislature which throw light upon the question, satisfies us that it is impossible to determine from that source whether or not any portion of the territory now enclosed within the limits of Archer County were ever embraced within the boundary originally assigned to Cooke County. Statutes on the subject discussed . ............................................... 644

**2. Recitals in Patent.**

Patent issued in 1855. It recited that the land was situated in Cooke County. Deposition of the Commissioner of the General Land Office stated that the certificate was located in Cooke, now Archer County. In absence of any other testimony, a deed for the land (now in Archer County) recorded in Cooke County January 10, 1857, will be held to have been properly recorded; and a copy admissible in evidence under the statute ..................................................... 646

ERROR to Court of Civil Appeals for Second District, in an appeal from Archer County.

*W. W. Flood* and *A. H. Carrigan*, for plaintiff in error.—1. A certified copy of a deed from the records of Cooke County, conveying land in Archer County only, is a nullity and is no proof of the transfer of real estate in Archer County. Rev. Stats., art. 4333; Act May 12, 1846, sec. 4; Alford v. Jones, 71 Texas, 519; Jones v. Powers, 65 Texas, 207; Hancock v. Lumber Co., 65 Texas, 225; Uhl v. Musguez, 1 Posey's U. C., 650.

2. The territory of a new county remains subject to the jurisdiction of the county from which it was taken for registration purposes until organized or attached to some other county for that purpose. Rev. Stats., art. 670; Baker v. Beck, 74 Texas, 562; Lumpkin v. Muncey, 66 Texas, 311; Reeves County v. Pecos County, 69 Texas, 177.

*Hutcheson, Carrington & Sears, F. E. Dycus,* and *L. W. Hart,* for defendants in error.

GAINES, Associate Justice.—The plaintiff in error brought this suit against defendants in error Mann & Stephens to recover a tract of land consisting of 1476 acres lying in Archer County, which was was patented to the heirs of F. Gibenrath. J. C. Hutchinson was vouched in as warrantor, and made himself a party defendant. The case was tried before the court without a jury, and resulted in a verdict for the plaintiff for 467 acres of the tract, and for the defendants for the remainder. From this verdict she sued out a writ of error. The Court of Civil Appeals affirmed the judgment, and from that affirmance the present writ of error is prosecuted.

F. Gibenrath fell at Goliad. He left surviving him a wife, who subsequently married one Jacobson, and two daughters, of whom the plaintiff was one. The defendants claimed title to the 1009 acres which was adjudged to them under a deed alleged to have been executed November 18, 1856, by Mrs. Jacobson and the two daughters, joined by their respective husbands, to J. De Cordova. The plaintiff by affidavit attacked the alleged conveyance as a forgery.

The court, over the plaintiff's objections, admitted in evidence a certified copy of the deed from the records of Cooke County, which showed that it was there filed for record January 10, 1857.

The deed was objected to on several grounds, but one of which was relied on in the brief filed by plaintiff in error in the Court of Civil Appeals. The objection there urged, and which is still insisted upon in this court, is that the deed was not properly recorded in Cooke County because the land did not then lie in that county.

It is an undisputed fact that the land now lies in Archer County; and it is broadly asserted in the brief for plaintiff in error, that " the territory of Archer County was never a part of Cooke County." Counsel for defendants in error assert with equal emphasis that the land lay in Cooke County at the time the deed was filed for record. Except a statement in a deposition of the Commissioner of the Land Office, that the certificate " was located in Cooke, now Archer County," no testimony was introduced by either side upon the question. Counsel for the respective parties seem to treat it as a matter of which we are required to take judicial knowledge, and refer to the statutes fixing the boundaries of the two counties in support of their respective positions.

But we are of opinion that neither contention can be maintained. A careful examination of the several acts of the Legislature which throw light upon the question satisfies us that it is impossible to determine from that source whether or not any portion of the territory now included within the limits of Archer County was ever embraced within the boundaries originally assigned to Cooke.

Cooke County was created by an act approved March 20, 1848. Its extreme south and its western boundaries were fixed by calls for lines

running from the southwest corner of Denton west sixty miles, and thence north to Red River.   Pasch. Dig., art. 348.   Its west boundary was therefore fixed at the distance of sixty miles from the western boundary of Denton, and ran parallel to it.   The west boundary so established remained unaffected until the Act of August 27, 1856, which created Jack County, became a law (Paschal's Digest, article 430), unless its location was changed by the Act of February 2, 1856 (Paschal's Digest, article 430), which created the county of Young.   Whether the limits there assigned to Young encroached upon the territory of Cooke as it was originally established, becomes the controlling question in determining the immediate point under consideration; for the east boundary line of Archer is but a prolongation northward of the eastern boundary of Young, and it follows that if Young County extends so far east as to embrace any part of the original territory of Cooke, then a portion of the latter territory was necessarily included in Archer when that county was created.

But the location of the eastern boundary of Young with reference to the western line of Cooke is a matter which the statutes do not enable us to determine.   The boundaries of Young County as originally established were described as " beginning at a point due west of the southwest corner of the county of Jack, and six miles eastwardly of the southeast corner of the Indian Reserve, thence north thirty miles, thence west thirty miles, thence south thirty miles, and thence east to the place of beginning.   Laws 1855–56, p. 72; 2 Sayles' Early Laws, art. 2519.

It is to be noted that although the southwest corner of the county of Jack is called for, no county of that name had been established at the time.   Some bill may have been pending for the creation of a county to be known as Jack, but what its proposed boundaries may have been we do not know.   It is apparent, however, that if such was the case, its boundaries were in part at least different from those of the county of that name which was subsequently created by the Act of August 26, 1856.   Laws Spec. Sess. 1856, p. 62; 2 Sayles' Early Laws, art. 2584.

The act last named fixed the southwest corner of Jack at the southeast corner of Young.   At the same session the act creating Young County was so amended as to omit from the calls for its boundaries the words " due west from the southwest corner of the county of Jack."   Laws 1856, Spec. Sess., p. 41; 2 Sayles' Early Laws, art. 2559.   The purpose of the amendment, it is to be inferred, was not to change the boundaries of the county, but merely to omit words of misdescription.

The act creating Young County was passed at a regular session of the Legislature, and although the act amendatory thereof and that creating the county of Jack were passed by the same Legislature, their passage occurred at a subsequent session.   Subsequently the calls for the boundaries of Jack County were so changed as to place its southeast corner in

the east line of Young, instead of putting it at its southeast corner, as in the original act. Laws 1857–58, p. 97; 2 Sayles' Early Laws, art. 2710. This change was doubtless due to the fact that it had been ascertained that a line running due west from the southwest corner of Wise would intersect the east line of Young at a point north of its southeast corner; and it tends strongly to show that at the time the original act was passed, the position of the south and east lines of Young with reference to the original south and west lines of Cooke were not definitely known.

It is notable that in defining the boundaries of Jack the Legislature did not give the length either of its north or south boundary line, as was usual with reference to all the counties laid out in that section of the State; and it is to be inferred that this resulted from the fact that the distance from the west line of Wise to the east line of Young was not known. That it was not an inadvertent omission is shown by the fact that there is the same omission with respect to the boundaries of Clay, which occupies with respect to Archer the same position which Jack occupies with respect to Young. We know, that after Wise County was created the territory for a distance of thirty miles west remained in the county of Cooke; but not knowing the distance from the west boundary of Wise to the east boundary of Young, we can not say whether the limits of Young embraced any of the territory of Cooke or not.

Taking these statutes all together, our conclusion is, that in creating the county of Young the Legislature intended to establish its boundaries without reference to the then existing boundaries of Cooke, and that it can not be judicially ascertained whether there was any conflict or not.

Since the east line of Archer is but the prolongation of the east line of Young, it follows that we can not determine whether any part of the original territory of Cooke is or is not now included within the county of Archer.

Archer County was not created until January 22, 1858. 2 Sayles' Early Laws, art. 2685. The deed in question was recorded in January of the previous year. The patent, which was issued November 10, 1855, recites the land was situated in Cooke County. The Commissioner of the General Land Office testified, that the certificate by virtue of which the land was patented was located in Cooke, now Archer, County. The recitals in the patent must be taken as prima facie true; and not being able to say as a matter of judicial knowledge that no part of the county of Archer was ever embraced in the county of Cooke, we are constrained to hold that the deed was properly recorded in the county of Cooke.

We are therefore of opinion that the court did not err in admitting the certified copy of the deed which purported to be executed by plaintiff and others to J. De Cordova. With this copy in evidence the testimony was amply sufficient to sustain the finding that the deed was genuine, although the plaintiff attacked it as a forgery, and testified that she never executed

it. It is therefore unnecessary for us to decide whether or not the Court of Civil Appeals was correct in holding that the finding of the trial judge should be sustained, even though the copy of the deed should have been excluded.

We find no error in the judgments of the District Court and of the Court of Civil Appeals, and they are therefore affirmed.

*Affirmed.*

Delivered May 3, 1894.